**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0887-23

RIO VISTA MAHWAH
HOMEOWNERS ASSOCIATION
and DARLINGTON VILLAGE
CONDOMINIUM ASSOCIATION,
INC.,

      Plaintiffs-Respondents,

v.

TOWNSHIP OF MAHWAH and
TOWNSHIP OF MAHWAH
PLANNING BOARD,

      Defendants-Respondents,

and

ESTATE OF JOHN MERRILL,

      Defendant/Third-Party
      Plaintiff-Respondent,

v.

CHRISTOPHER HUDAK, TAMMY
RUSSO-HUDAK,

      Third-Party Defendants.

_____

IN THE MATTER OF GEORGE J. COTZ,

     Appellant.

_____

Submitted October 30, 2024 – Decided December 16, 2024

Before Judges Marczyk and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-4050-22.

George J. Cotz, appellant pro se.

Respondents have not filed a brief.

PER CURIAM

In this one-sided appeal, we consider George J. Cotz's—the former attorney for defendant and third-party plaintiff the Estate of John Merrill (the Estate)—appeal from the March 3, 2023 and October 12, 2023 orders, holding him in contempt of court and imposing sanctions. Because we conclude the trial court misapplied Rule 1:10-1, we reverse and vacate the orders.

We begin our analysis with a review of the orders and issues that we consider to be on appeal. In Cotz's original notice of appeal (NOA), he stated he was appealing the order entered on March 3, 2023. In the March order, the trial court denied the Estate's motion seeking a finding that the parties entered

2

into a settlement agreement; and held Cotz in contempt of court and imposed sanctions on him.

A few days after filing his NOA, Cotz filed an amended case information statement (CIS), in which he stated he was appealing the March 3, 2023 order, and the April 28, 2023 order, that ratified the March order.[1] Cotz described himself as a "new party." In part, Cotz stated "[i]n the course of th[e underlying litigation], the [c]ourt entered a discovery order that the Estate failed to obey. Eventually, the [c]ourt found [Cotz] (who represented the Estate) to be in contempt." Cotz declined a CASP[2] conference because he did "not believe any of the parties to the action have a position on the finding of contempt; and in any case, none of them are in a position to abate it."

Thereafter, Cotz filed an amended NOA and advised he was appealing an October 12, 2023 order. The October order deemed the March order to be "final as it relate[d] to" Cotz.

---

[1] The April order provided the: (1) Estate "remain[ed] in contempt of the court's previous orders"; (2) Estate's "third motion . . . to enforce a settlement" was denied; and (3) "matter was previously dismissed without prejudice."

[2] CASP is the Appellate Division's Civil Appeals Settlement Program.

A-0887-23

Therefore, on appeal, we consider the orders of March and October that addressed the trial court's finding that Cotz's actions were contemptuous and required sanction.[3]

Consequently, to the extent that Cotz's appellate brief addresses the trial court's purported error in failing to find the parties settled the underlying matter, we decline to consider that argument as not properly brought in the appeal. See Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 461 n.1 (App. Div. 2002) ("An appellant . . . proceeds at his or her peril by insufficiently completing the [NOA] or CIS. The appellant should explicitly designate all judgments, orders and issues on appeal in order to assure preservation of their rights on appeal.").

Further, to the extent Cotz's appellate brief addresses the trial court's award of attorney's fees against the Estate, based on the Estate's failure to provide discovery, we decline to consider that argument.

---

[3] Plaintiffs, Rio Vista Mahwah Homeowners Association Inc. and Darlington Village Condominium Association, Inc., and defendants, Township of Mahwah and the Township of Mahwah Planning Board, understood Cotz was appealing the March and October orders relating to Cotz's contempt and therefore, took no position in the appeal and declined to participate. Their letters of non-participation were copied to Cotz. There is nothing in the record to suggest that Cotz notified the parties his appeal included other issues.

A-0887-23

First, Cotz acknowledges this argument was not raised with the trial court. We "decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co. Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)). Here, there are no issues pertaining to the trial court's jurisdiction nor is this a matter of great importance.

Second, Cotz appealed in his individual capacity, not on behalf of the Estate. In his CIS, he describes himself as a "new party," and in his appellate brief he states he "represented" the Estate in the underlying litigation, but not on appeal. Indeed, the Estate has not filed an appeal.

Therefore, it is questionable if Cotz has standing to assert claims on behalf of the Estate. "New Jersey has long held the view that litigation is 'appropriately confined . . . to those situations where the litigant's concern with the subject matter evidenced a sufficient stake and real adverseness.'" Jen Elec., Inc. v. Cnty. of Essex, 197 N.J. 627, 645 (2009) (alteration in original) (quoting Crescent Park Tenants Ass'n v. Realty Equities Corp., 58 N.J. 98, 107 (1971)).

Cotz's appeal, in his individual capacity, does not endow him with standing to assert the Estate's argument regarding the award of attorney's fees based on the Estate's failure to provide discovery. Cotz did not suffer harm by assessment of fees against the Estate stemming from its failure to provide discovery.

As to the merits of the appeal, we review the various orders to provide perspective.[4] According to the November 4, 2022 order, plaintiffs moved to compel the Estate to produce documents referenced in the Estate's counterclaim. In its counterclaim, the Estate alleged it had a "contract." The trial court's order states that the Estate was "in default of its obligations" under Rule 4:18-2, to provide copies of documents referred to in its counterclaim.[5] The order required the Estate to "produce and serve" the contract documents by November 11, 2022. Moreover, finding the Estate's failure to comply with the rule was "unjustified," the order required the Estate to pay plaintiffs' "reasonable expenses and attorney's fees incurred in the filing of th[e] motion."

---

[4] The only transcript provided in the record is from the January 6, 2023 hearing.

[5] Rule 4:18-2 provides: "When any document or paper is referred to in a pleading but is neither annexed thereto nor recited verbatim therein, a copy thereof shall be served on the adverse party within [five] days after service of his written demand therefor."

A-0887-23

On January 6, 2023,[6] the trial court considered plaintiffs' and third-party defendants' motion to dismiss the Estate's complaint with prejudice under Rule 4:23-2(b)(3).[7] Plaintiff and third-party defendants moved to dismiss the counterclaim and third-party complaint with prejudice because the Estate was "in default of its obligation to comply with R[ule] 4:18-2."

The trial court "dismissed without prejudice" the Estate's counterclaim and third-party complaint because the Estate failed to comply with Rule 4:18-2.

Moreover, in the order, the judge stated Cotz had "repeatedly ignored the orders of this court as set forth on the record." Thus, "[t]he court w[ould] consider an application for dismissal with prejudice if the ordered discovery [wa]s not produced by January 11, 2023."

On January 20, 2023, the trial court considered the Estate's motion to enforce a settlement and plaintiffs' and third-party defendants' cross-motion to

---

[6] Cotz states the court's order is dated January 12, 2023, however, our review of the record reveals the order is dated January 6, 2023.

[7] Rule 4:23-2(b)(3) provides: "If a party . . . fails to obey an order to provide or permit discovery, . . . the court . . . may make such orders in regard to the failure as are just, and among others the following: [a]n order . . . dismissing the action or proceeding or any part thereof with or without prejudice . . . ."

A-0887-23

dismiss the Estate's complaint with prejudice under Rule 4:23-2(b)(3); and to enforce their rights under Rule 1:10-3.[8]

The trial court denied the Estate's motion to enforce the proposed settlement. The judge found the "settlement [wa]s anticipated but ha[d] not yet been reached." Therefore, "there [wa]s presently no settlement to be enforced."

As to plaintiffs' and third-party defendants' cross-motion, the order provided the Estate was "in default of its obligations to comply with R[ule] 4:18-2 and its failure to comply with the [c]ourt's orders entered November 4, 2022, and January 6, 2023, was unjustified." In a rider attached to the January 20, 2023 order, the trial court stated "the Estate's continued failure to abide by the orders . . . [was] contemptuous . . . in failing to produce the ordered discovery."

The order provided that "the Estate . . . will comply with the terms of the [c]ourt's [o]rder dated December 12, 2022[,] and the court impose[d] a sanction of $250 per day for each day commencing January 23, 2023[,] [that] the Estate fail[ed] to comply."

---

[8] Rule 1:10-3 in part provides: "Notwithstanding that an act or omission may also constitute a contempt of court, a litigant in any action may seek relief by application in the action."

In the rider, the trial court stated that Cotz "confirmed that discovery had not been provided and [Cotz] opined that it was not necessary on account of [a] settlement."

Finally, the rider provided:

> The court declines to dismiss the matter with prejudice at this time. The court directs [Cotz] to advise the Estate representatives, in writing, by regular and certified mail, return receipt requested, that the failure of the Estate to produce discovery as set forth in the orders of this court will result in dismissal of their third-party complaints and counterclaims. [Cotz] shall provide proof of mailing and the returned green card to the court on or before February 3, 2023.

On March 3, 2023, the trial court considered the second Estate motion to deem the matter settled and to vacate, as moot, "[t]he [c]ourt's [o]rders of November 4, 2022, January 6, 2023, and January 20, 2023."

The judge deemed the Estate's motion, as it pertained to the purported settlement, to be one for reconsideration of the January 20, 2023 order. In the March 3, 2023 order, and accompanying rider denying reconsideration, the judge again found there was no settlement.

In addition, the trial court "found [Cotz] to be in contempt of court" and "sanctioned [him] . . . for failure to provide proof of written notification to his clients on or before February 4, 2023, as ordered in the January 20, 2023 order."

A-0887-23

The trial court stated: (1) an appeal—not noncompliance—was dictated by the Rules of Court when a "litigant believes the court erred"; (2) Cotz "advised the court that he had not mailed the notices to his clients and therefore had no proof of mailing" and his indication "that he notified [the Estate] by email" was unavailing because no "proof of any electronic mail notification ha[d] been provided"; and (3) since Cotz "ha[d] repeatedly failed and refused to comply with the orders of the court . . . Cotz, an officer of the court . . . [was] in contempt."

The trial court acknowledged the "attorney-client privilege, in circumstances where a client refused to follow the advice of their attorney with regard to compliance with an order or orders," nonetheless the trial court noted "the attorney has options to distance themselves from the contempt as opposed to facilitating non-compliance." Thus, "[i]n this case, the court . . . provided . . . Cotz with a mechanism whereby he could demonstrate to the court that the orders were transmitted to the Estate and the Estate failed to comply."

The judge found "[i]nstead, . . . Cotz . . . willfully disobeyed the order . . . by failing to advise the client in writing by regular and certified mail, the consequences of their failure to comply and thereafter provide the court with proof of mailing." The trial court found that the Estate's and Cotz's behavior—

10

"which include[d] failure to provide discovery"—"caused needless expense and litigation to the other parties to the action."

On April 28, 2023, the trial court considered the Estate's third motion, to enforce the purported settlement, and vacate, as moot, "[t]he [c]ourt's [o]rders of November 4, 2022, January 6, 2023, January 20, 2023, and March 3, 2023."

The judge considered this motion as the Estate's second motion for reconsideration of the January 20, 2023 order. The trial court denied the motion, relying on "its previous order denying reconsideration" and "the contrary evidence provided by plaintiffs." The court noted "[t]he matter was previously dismissed without prejudice."

In an October 12, 2023 order, the trial court deemed the March 3, 2023 order, "final as it relate[d] to" Cotz.

On appeal, we consider Cotz's argument that the trial court failed to comport with the Rules of Court in finding him in contempt of court and subject to sanctions.[9] Cotz contends that the trial court failed to satisfy the requirements under Rule 1:10-1(a) and (d).

---

[9] Under Rule 1:10-2, "[e]very summary proceeding to punish for contempt other than proceedings under R[ule] 1:10-1 shall be on notice and instituted only by the court upon an order for arrest or an order to show cause."

A-0887-23

"In a contempt case, we must generally review the record and make a de novo determination."  In re Duane, Morris & Hecksher, LLP, 315 N.J. Super. 304, 311 (App. Div. 1998) (citing N.J.S.A. 2A:10-3[10] and Rule 2:10-4[11]).

A trial court's authority "to punish for contempt is long established." Amoresano v. Laufgas, 171 N.J. 532, 549 (2002).  However, the New Jersey Supreme Court has described "it as an extraordinary power, to be exercised sparingly against those whose conduct 'has the capacity to undermine the court's authority and to interfere with or obstruct the orderly administration of justice.'" Id. at 549-50 (quoting In re Daniels, 118 N.J. 51, 61 (1990)).

Generally, our court rules mandate certain procedures, including evidentiary hearings, for contempt-of-court adjudications.  See R. 1:10-1 (contempt in the presence of the court); R. 1:10-2 (summary contempt proceedings); Wolfe v. Malberg, 334 N.J. Super. 630, 635-36 (App. Div. 2000).

---

[10]  N.J.S.A. 2A:10-3 provides:  "Every summary conviction and judgment, by the Superior Court . . . shall be reviewable by the appellate division of the Superior Court . . . .  Such review shall be both upon the law and the facts . . . ."

[11]  Rule 2:10-4 states:  "Every summary conviction by a court for contempt shall be reviewable on the law and the facts.  The appellate court shall render such judgment and order for enforcement thereof as it deems just under the circumstances."

"[T]he Rules of Court provide for two methods of trying the alleged contemnor, 'depending upon whether the offense was committed in, or outside, the presence of the court.'" Amoresano, 171 N.J. at 550 (quoting In re Carton, 48 N.J. 9, 21 (1966)). "Acts committed in the presence or face of the court are governed by Rule 1:10-1." Ibid. Under Rule 1:10-1:

> A judge conducting a judicial proceeding may adjudicate contempt summarily without an order to show cause if:
>
>> (a) the conduct has obstructed, or if continued would obstruct, the proceeding;
>>
>> (b) the conduct occurred in the actual presence of the judge, and was actually seen or heard by the judge;
>>
>> (c) the character of the conduct or its continuation after an appropriate warning unmistakably demonstrates its willfulness;
>>
>> (d) immediate adjudication is necessary to permit the proceeding to continue in an orderly and proper manner; and
>>
>> (e) the judge has afforded the alleged contemnor an immediate opportunity to respond.
>
> The order of contempt shall recite the facts and contain a certification by the judge that he or she saw or heard the conduct constituting the contempt and that the contemnor was willfully contumacious. Punishment may be determined forthwith or deferred. . . .

13

[(Emphasis added).]

The requirements are read in the conjunctive. See In re Duane, Morris & Hecksher, LLP, 315 N.J. Super. at 312. All five of the enumerated requirements of the rule must be satisfied. See Amoresano, 171 N.J. at 550.

Our analysis starts with Cotz only arguing that there was no showing his conduct ran afoul of the requirements under (a) and (d). Therefore, having not briefed the inapplicability of Rule 1:10-1 or the non-existence of requirements—(b), (c) or (e)—we deem any argument regarding those issues waived. See N.J. Dep't of Envt'l Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2 (App. Div. 2015) ("An issue that is not briefed is deemed waived upon appeal."). Further, Cotz acknowledges that he "failed to submit proof of service" of the order on the Estate. Therefore, he acknowledges he violated the trial court's order.

Nonetheless, Cotz contends that "when the [j]udge pointed out . . . that he had not provided proof of compliance with her earlier order, he immediately apologized and explained his oversight, and he did promptly file a [p]roof of [s]ervice." He argues that these facts "alone, undermine[] the claim of 'willful contempt.'"

Nonetheless, remaining for our consideration is whether Cotz's conduct "obstructed, or if continued would obstruct, the proceeding," (a); and whether

14

"immediate adjudication [wa]s necessary to permit the proceeding to continue in an orderly and proper manner," (d). R. 1:10-1.

In conducting our de novo review, we focus on the purpose of the March 3, 2023 motion—the motion proceeding that led the trial court to conclude Cotz's conduct was contemptuous and deserving of sanction—to determine if requirements (a) and (d) of Rule 1:10-1 were satisfied.

The purpose of the March 3, 2023 motion was to consider the Estate's second motion regarding the enforcement of the parties' purported settlement agreement.

In finding Cotz in contempt, in the March proceeding, the trial court found that Cotz had: (1) "repeatedly failed and refused to comply with the orders of the court," and (2) "willfully disobeyed the [January 20, 2023] order, . . . to advise the [Estate] in writing by regular and certified mail, the consequences of [its] failure to comply" with its discovery obligations.

However, not explained by the trial court was how Cotz's "fail[ure] and refus[al] to comply with the orders" or how his failure to comply with the January 20, 2023 order; "obstructed" the proceeding regarding whether the parties entered into a settlement agreement. See R. 1:10-1(a).

Moreover, the trial court failed to explain why "immediate adjudication [wa]s necessary to permit the proceeding to continue in an orderly and proper manner." R. 1:10-1(d). Again, without explanation as to how Cotz's failures affected the proceedings, we are unable to determine if "immediate adjudication" was necessary. Ibid.

We note that Rule 4:23-2(b)(4) allows a trial court to make a contempt finding upon "the failure to obey any orders." However, "the trial court . . . is [not] at liberty to ignore . . . the requirement that, depending on the circumstances, it be handled under R[ule] 1:10-1 or R[ule] 1:10-2." Canino v. D.R.C. Co., 212 N.J. Super. 620, 624 (App. Div. 1986).

There are "a range of sanctions . . . available to the trial court when a party violates a court rule." Johnson v. Mountainside Hosp., Respiratory Diseases Assocs., P.A., 199 N.J. Super. 114, 119-20 (App. Div. 1985) (quoting Zaccardi v. Becker, 88 N.J. 245, 252-53 (1982)). Moreover, "it is fundamental that the trial court has the 'inherent discretionary power to impose sanctions for failure to make discovery.'" Id. at 120 (quoting Calabrese v. Trenton State Coll., 162 N.J. Super. 145 (App. Div. 1978)). A trial court "is free to apply [sanctions], subject only to the requirement that they be just and reasonable in the circumstances." Ibid. (quoting Lang v. Morgan's Home Equip. Corp., 6 N.J.

333, 339 (1951)); see also Rule 4:23-2 (sanctions a trial court may use to compel compliance).

Nonetheless, here, the requirements of Rule 1:10-1 (a) or (d) were not satisfied. Therefore, we reverse and vacate the March and October orders. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17

A-0887-23