OPINION OF THE COURT
Sandra J. Feuerstein, J.
This motion involves a claim by the plaintiff that she slipped and fell upon a “slippery substance” existing on the floor of one of the aisles in the defendant’s supermarket. This court’s preliminary conference order dated March 25, 1997, provided, in pertinent part, that: “All parties [are] directed to furnish each [other] the names and address of eye and notice witnesses to the occurrence within twenty days from the date of this order, as well as [photographs] of scene and any surveillance depicting accident, if any.”
*185 In response, the defendant stated that “video surveillance of the incident, if any, shall be provided in accordance with CPLR 3101 [i] and Di Michel v South Buffalo Railway Co., 80 NY2d 184, 590 NYS2d 1 (1992) and its progeny.”
The plaintiffs motion to compel the immediate production of the videotape for 12 hours prior to the accident was denied without prejudice to renewal when and if it was determined that such a videotape actually exists.
The defendant has now verified the existence of a surveillance videotape.
The defendant now moves for a protective order that it does not have to exchange the video surveillance tape until after the plaintiffs deposition and that it does not have to produce 12 hours of videotape.
In DiMichel v South Buffalo Ry. Co. (80 NY2d 184), the Court of Appeals addressed the issue whether surveillance tapes made of a plaintiff in a personal injury action, during the litigation, were discoverable. The Court treated the surveillance tape as material prepared in anticipation of litigation and, therefore, subject to a qualified privilege (supra, at 196). The Court reasoned that if the surveillance tape was treated as a party statement, the plaintiff could tailor his or her testimony based upon the videotape. Accordingly, the Court held that the videotape should be turned over only after the plaintiff has been deposed (supra, at 197). This allows the plaintiff to authenticate the tape but not tailor testimony based upon it.
Here, the facts are not quite identical to those in DiMichel (supra). In this case the surveillance tape depicts the actual happening of the accident, not merely the plaintiff performing physical activities contrary to her claimed injuries. There are no reported cases dealing with the issue presented here.
Nevertheless, the logic behind DiMichel (supra) is applicable here. The danger is present that the plaintiff would tailor her testimony based upon what is depicted on the videotape. The best way to ensure honest testimony is to conduct the plaintiffs deposition before the videotape is exchanged.
Further, the plaintiff has not demonstrated how she is prejudiced by being deposed before receiving the videotape.
Accordingly, the request for a protective order is granted to the extent that the surveillance videotape shall be exchanged after the conclusion of the plaintiffs deposition.
Additionally, the request for a protective order limiting the time frame for the videotape is granted to the extent that the *186 defendant shall provide the surveillance tape for six hours before the alleged time of the accident.